IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ADMASSU REGASSA,                :
                                :
            Plaintiff           :
                                :
      v.                        :    CIVIL NO. 4:CV-14-1122
                                :
C. BRININGER, ET AL.,           :    (Judge Brann)
                                :
            Defendants          :

**<u>MEMORANDUM</u>**

September 4, 2015

**<u>Background</u>**

   Admassu Regassa , an inmate presently confined at the Allenwood Federal

Correctional Complex, White Deer, Pennsylvania filed his <u>pro</u> <u>se</u> combined

<u>Bivens</u>[1]/Federal Tort Claims Act (FTCA)  action regrading his prior confinement

at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg).

   Named as Defendants are the United States of America and the  following

---

[1]    <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403
U.S. 388 (1971). <u>Bivens</u> stands for the proposition that "a citizen suffering a
compensable injury to a constitutionally protected interest could invoke the general
federal question jurisdiction of the district court to obtain an award of monetary
damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478,
504 (1978).

twenty-eight (28) USP Lewisburg officials: Warden J.E. Thomas; Associate Warden A.W. Wilson; Captain F. Entzel; Correctional Officers C. Brininger, S. Argueta, A. Kranzel, J. Oldt, M. Erb, E. Kulp; N. Beaver, C. Wise, S. Buebendorf, J. Eck, Chucky Anderson, M. Hackenberg, and D. Johnson; Nurse Gregory George; Lieutenants Sherman, Saylor, A. Miller, Seeba, Carrasquilo, and Dowkus; Physician's Assistant (PA) Francis Fasciana; Doctor Kevin Pigos; Counselor M. Edinger; Disciplinary Hearing Officers (DHO) A. Jordan and B. Chambers.

Plaintiff states that prior to a July 8, 2013 hearing before DHO Jordan he was threatened with physical harm by Counselor Edinger, Brinninger, Kranzel, and Kulp. See Doc. 1, ¶ 6. Following conclusion of the hearing, Regassa claims that he was physically assaulted by Correctional Officers Brininger, Kranzel and Kulp and other unidentified officers in a second floor hallway near the shower area. Brininger allegedly flung Regassa to the floor and said Defendant along with Krenzel and Kulp as well as other officers repeatedly kicked and stomped the inmate for approximately three minutes. Plaintiff asserts that he suffered multiple injuries and was also subjected to racially and sexually inflammatory verbal abuse. See id. at ¶ 7. The Complaint indicates that Defendants Buebendorf and Wise were present at the DHO hearing and also during the assault but failed to intervene on Plaintiff's behalf.

The Complaint next asserts that the officers involved in the assault attempted to cover up their actions by falsely calling in a report and a request for assistance claiming that Plaintiff had spat upon and assaulted Edinger. Lieutenant Sherman and his "shakedown crew" which included Defendant Argueta and other correctional staff responded to the call. Id. at ¶ 8. The Complaint contends that Argueta used excessive force by placing the Plaintiff in overly tight ambulatory restraints.

Regassa contends that he remained in ambulatory restraints for approximately three (3) days and was issued a falsified misconduct charge for assaulting Brinninger. During that period, Plaintiff states that due to the tightness of the restraints, he was unable to eat, drink, or take care of his personal hygiene needs and was kept in a bug infested cell. It is also alleged that Regassa made numerous requests to have his restraints loosened which were ignored. In addition, PA Fasciana and Doctor Pigos purportedly ailed to provide Plaintiff with needed treatment for his injuries resulting from the July 8, 2013 attack. Regassa elaborates that his requests for x-rays therapy, pain medication and a complete evaluation were denied. See id. at ¶ 10.

According to Plaintiff he was subjected to additional unwarranted excessive force on the following occasions: (1) June 26, 2013 by Defendant Beaver

3

(slapped in the face) ; (2) June 26, 2013 by Defendant Johnson  (severely twisted his arm) ; (3)  December 23, 2013 by Defendant Eck (slapped in the face twice); (4) November 8, 2012 by Defendant Hackenberg (slammed into shower handle and punched) ; and (5)  October 17, 2012 (violently shaken several times )  and November 8, 2012 (head slammed into wall) by Defendant Anderson.

Furthermore, DHO Chambers was allegedly biased and failed to consider Regassa's testimony when finding him guilty of assault with respect to the July 8, 2013 incident.  See id. at ¶ 13.   Plaintiff adds that the above detailed violations of his constitutional rights were the result of a conspiracy. Finally,  Regassa maintains that he was subjected to verbal harassment and racial slurs and that Defendants United States, Wilson, Thomas, and Entzel failed to protect his safety.  See id. at ¶ 14.

Defendants have responded to the Complaint by filing a motion to dismiss and/or in the alternative for summary judgment.  See  Doc. 24.  They seek relief on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies with respect to his civil rights claims; (2)  Plaintiff's  Bivens claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment; (3) the civil rights allegations against Defendants Beaver, Johnson, Anderson, Hackenberg and Eck and the failure of the Complaint to identify his

FTCA claims violates Federal Rule of Civil Procedure 20; (4) the claims against

Warden Thomas, Associate Warden Wilson, and Captain Entzel are improperly

premised on a theory of <u>respondeat superior</u>; (5) a viable claim of conspiracy is not

raised in the Complaint; (6) the United States is not liable for punitive damages,

injunctive relief or alleged property loss under the FTCA.  The opposed motion is

now ripe for consideration.

**<u>Discussion</u>**

**<u>Motion to Dismiss</u>**

Defendants' pending dispositive motion is supported by evidentiary

materials outside the pleadings.  Federal Rule of Civil Procedure 12(d) provides in

part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters
> outside the pleading are presented to and not excluded by
> the court, the motion must be treated as one for summary
> judgment under Rule 56. All parties must be given
> reasonable opportunity to present all the material that is
> pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the

Defendants' motion.  Thus, their motion will be treated as solely seeking summary

judgment.  <u>See</u> <u>Latham v. United States,</u> 306 Fed. Appx. 716, 718 (3d Cir.

2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

## **Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Eleventh Amendment**

Defendants' initial argument contends that Plaintiff's action to the extent that it raises Bivens claims for monetary damages against them in their official capacities is barred by the Eleventh Amendment. See Doc. 33, p. 11.

The United States is generally immune from suit absent an explicit waiver of sovereign immunity, United States v. Mitchell, 445 U.S. 535, 538 (1980). This

7

"immunity is jurisdictional in nature," <u>FDIC v. Meyer,</u> 510 U.S. 471, 475 (1994),

and extends to government agencies and employees sued in their official

capacities. <u>Antol v. Perry,</u> 82 F.3d 1291, 1296 (3d Cir. 1996); <u>Chinchello v.</u>

<u>Fenton,</u> 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for

constitutional violations." <u>Germosen v. Reno,</u> Civil No. 99-1268, slip op. at 13

(M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.). Therefore, entry of summary judgment

in favor of the Defendants is appropriate to the extent that the Complaint asserts

<u>Bivens</u> claims against them in their official capacities.

**Personal Involvement**

Defendants next assert that the Complaint fails to allege personal

involvement by Warden Thomas, Associate Warden Wilson, and Captain Entzel in

the alleged constitutional violations. <u>See</u> Doc. 33, p. 18. Consequently, they

conclude that those three Defendants are entitled to entry of summary judgment

since the allegations against them are solely premised upon their respective

supervisory capacities.

A plaintiff, in order to state an actionable civil rights claim, must plead two

essential elements: (1) that the conduct complained of was committed by a person

acting under color of law, and (2) that said conduct deprived the plaintiff of a right,

privilege, or immunity secured by the Constitution or laws of the United States.
Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by
Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat
superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each
named defendant must be shown, via the complaint's allegations, to have been
personally involved in the events or occurrences which underlie a claim. As
explained in Rode:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . . [P]ersonal involvement
> can be shown through allegations of personal direction or of
> actual knowledge and acquiescence. Allegations of
> participation or actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Defendants Thomas, Wilson and Entzel are each clearly employed in
supervisory capacities within the prison. There is no assertion that any of those
officials participated in the alleged use of excessive force and placement in
restraints underlying this action. Likewise, the Complaint is devoid of facts
showing that any of those three Defendants directed, approved, or otherwise
condoned the use of any constitutional misconduct directed towards Regassa. As

such, the <u>Rode</u> personal involvement requirement has not been satisfied with respect to Warden Thomas, Associate Warden Wilson, and Captain Entzel.

It is also possible that Plaintiff may be attempting to establish liability against Thomas, Wilson, and Entzel due to their responses or non-response to his administrative grievances or complaints. Prisoners have no constitutionally protected right to a grievance procedure. <u>See</u> <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); <u>Speight v. Sims</u>, 283 Fed. Appx. 880, 881 (3d. Cir. 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. <u>See</u> <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by Plaintiff to establish liability against Warden Thomas, Associate Warden Wilson, and Captain Entzel based upon their handling of his administrative grievances or

complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the above discussion the request for entry of summary judgment on the basis of lack of personal involvement will be granted in favor of Warden Thomas, Associate Warden Wilson, and Captain Entzel with respect to any Bivens claims asserted against those officials.

## Conspiracy

Defendants further maintain that the Complaint does not set forth a viable conspiracy claim. See Doc. 33, p. 15.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The United States Court of Appeals for the Third Circuit has further noted that "[a] conspiracy claim must . . . contain supportive

factual allegations." Rose, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."  Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals.  See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  Id.; Rose, 871 F.2d at 366; Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991); Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young, 926 F.2d at 1405 n.16

There are no averments of fact in the Complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants.  Regassa

has simply not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred. While Plaintiff has set forth some arguable claims of constitutional misconduct, he has not adequately alleged that those actions were the result of a conspiracy. Summary judgment will be granted with respect to the claim of conspiracy.

**Improper Joinder**

Defendants next contend that the <u>Bivens</u> claims against Beaver, Johnson, Anderson, Hackenberg, and Eck are improperly joined in this matter. <u>See</u> Doc. 33, p. 13. They additionally argue that the Complaint fails to specify which claims are being pursued under the FTCA.

<u>Pro se</u> parties are accorded substantial deference and liberality in federal court. <u>Haines v. Kerner,</u> 404 U.S. 519, 520 (1972). They are not, however, free to ignore the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8 requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests, (2) the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief sought by the pleader.

Federal Rule of Civil Procedure 20 (a)(2) provides in relevant part that individuals may be joined in on action as defendants "if:

(A)     any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;  and

(B)     any question of law common to all defendants will arise in the action."

The majority of the Complaint centers around events which occurred between July 8-10, 2013.   However, as correctly noted by the Defendants the Complaint also include the following unrelated excessive force claims:  (1)  June 26, 2013 by Defendant Beaver (slapped in the face) ; (2) June 26, 2013 by Defendant Johnson  (severely twisted his arm) ; (3)  December 23, 2013 by Defendant Eck (slapped in the face twice);  (4) November 8, 2012 by Defendant Hackenberg (slammed into shower handle and punched) ; and (5)  October 17, 2012 (violently shaken several times )  and November 8, 2012 (head slammed into wall) by Defendant Anderson.

The Third Circuit has recognized that a complaint that "avers multiple constitutional violations over a span of seven years" arising out of different transactions and occurrences which in many instances fails to specify the defendant who committed the alleged constitutional violation does not comply with Rules 8 and 20.  Pruden v. SCI Camp Hill, 252 Fed. Appx. 436, 438 (3d Cir. 2007).  The Third Circuit added that under such circumstances the appropriate remedy was to afford the plaintiff an opportunity to file a proper amended complaint.

It has been similarly recognized that when a complaint "collects a series of distinct claims, involving diverse parties, and disparate acts which are alleged to have occurred at different times" the "joinder of such claims in a single lawsuit is inappropriate" under Rule 20 and the plaintiff should be afforded leave to file an amended complaint. Hull v. Unknown and Known Members of U.S. Government, Civil No. 1:12-CV-203, 2012 WL 5508494 *8 (M.D. Pa. Oct. 3, 2012).

Clearly, the alleged use of excessive force on July 8, 2013, the misconduct charge and disciplinary proceedings stemming from that incident, as well as the imposition of ambulatory restraints, denial of medical care, and imposition of disciplinary confinement following said event are all directly related and properly raised in a single complaint.

However, although Plaintiff must be afforded liberal treatment as a pro se litigant, the inclusion of multiple alleged instances of excessive force which both predate and postdate the July 8-10, 2013 events does not comply with Rule 20. Based upon an application of Pruden and Hull to those additional excessive force claims which clearly do not stem from the same underlying incident, this Court agrees that the joinder of said unrelated allegations in a single Complaint violates Rule 20.

Defendants also note that it is unclear from the Complaint as to which claims

15

are being pursued under the FTCA.  <u>See</u>  Doc. 33, p. 3.  The FTCA provides a

remedy in damages for the simple negligence of employees of the United States

<u>See</u> <u>United States v. Muniz</u>, 374 U.S. 150, 152 (1963).

 Under the FTCA, sovereign immunity is waived against persons suing the

federal government for the commission of various torts.[2]  <u>See</u> <u>Simon v. United</u>

<u>States</u>, 341 F. 3d 193, 200 (3d Cir. 2003).  An action filed pursuant to the FTCA

must first be submitted in writing to the appropriate federal agency as an

administrative tort claim.  <u>See</u> 28 U.S.C. § 2675.  The statute of limitations for

submitting an administrative tort claim to the agency is two (2) years.  <u>See</u> <u>id</u>. at §

2401(b).  The deadline for seeking judicial review is six (6) months after the

agency's final denial of the administrative tort claim.  <u>See</u> <u>Pascale v. United States</u>,

998 F. 2d 186, 191 (3d Cir. 1993).  This statute of limitations begins to run from

---

[2]  A plaintiff pursuing an FTCA claim must show:  (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss.  <u>Mahler v. United States</u>, 196 F. Supp. 362, 364 (W.D. Pa. 1961).  The only proper Defendant for purposes of an FTCA claim is the United States of America.  <u>See</u> 28 U.S.C. § 2679(d).
 Except for limited circumstances, an FTCA claim in federal court is limited to recovery of the sum certain amount requested in the underlying  administrative claim.  <u>See</u> <u>McMichael v. United States</u>, 856 F.2d 1026, 1035 (8th Cir. 1988).  Thus, this Court also agrees with Defendants' pending argument that punitive damages and injunctive relief cannot be requested under the FTCA.

the mailing date of the denial.[3]  Tuttle v. United States Postal Service, 585 F. Supp.

55, 56  (M.D. Pa. 1983), aff'd, 735 F. 2d 1351 (3d Cir. 1984).

This Court agrees that based upon a review of the Complaint it is unclear as

to the FTCA claims which Plaintiff wishes to proceed with before this Court.

Pursuant to the above discussion as well as the concerns expressed below, Regassa

will be afforded opportunity to submit a curative amended complaint.

**Administrative Exhaustion**

Defendants further contend that although Plaintiff administratively

exhausted his pending due process claim against DHO Chambers, "he failed to

submit timely administrative remedies concerning any of his [other] civil rights

claims."   Doc. 33, p. 8.  Section 1997e(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison
> conditions under Section 1979 of the Revised Statutes of
> the United States (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as
> are available are exhausted.

_____

[3] A court may not extend the six month time period.  See United States v. Kubrick, 444 U.S. 111, 117-18 (1979).  The time limitations contained in the FTCA are jurisdictional in nature. Willis v. United States, 879 F. Supp  889, 892 (C.D. Ill. 1994). Thus, a plaintiff's failure to sue within the period of limitations recognized by § 2401 deprives a court of subject matter jurisdiction.  Ahmed v. United States, 30 F.3d 514, 516  (4th Cir. 1994).

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit, a procedural default rule "prevents an

end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81, 82 (2006).

The BOP has a well established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." See 28 C.F.R. § 542.14(a). The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to respond." See 28 C.F.R. § 542.18.

If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. See 28 C.F.R. §

542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

According to an undisputed declaration under penalty of perjury by BOP Attorney Advisor Michael Romano, who avers that based upon his search of the BOP's computerized administrative remedy index, Plaintiff has filed thirty (30) BOP grievances, seven (7) of which were administratively exhausted. . Doc. 32-2, Exhibit 1, ¶ 5. Among those seven exhausted filings was an appeal of the incident report Regasssa received on July 8, 2013 which resulted in a hearing being held before DHO Chambers. Romano adds that Plaintiff has filed five administrative tort claims including one relating to excessive use of force by prison staff on July 8, 2013. See id. at ¶ 16.

As noted above, this Court agrees that it is unclear was to which claims are presently being pursued under the FTCA. Due to that deficiency, a determination as to whether summary judgment should be granted on the basis of non-exhaustion is not possible at this juncture as it is unclear as to which allegations seek relief

under <u>Bivens</u>.  As addressed earlier, Regassa will be afforded opportunity  to file an amended complaint which should only include properly identified <u>Bivens</u> and FTCA claims stemming from the surviving factual allegations set forth in the Original Complaint.

## <u>Conclusion</u>

Based upon the above discussion, the Defendants' dispositive motion will be construed as solely seeking entry of summary judgment and granted in part. Entry of summary judgment will be granted in favor of the Defendants to the extent that the Complaint asserts <u>Bivens</u> claims against them in their official capacities. Second, entry of summary judgment on the basis of lack of personal involvement will be granted in favor of Warden Thomas, Associate Warden Wilson, and Captain Entzel with respect to any <u>Bivens</u> claims asserted against those officials.

Third, summary judgment will be granted with respect to the claim of conspiracy.  Fourth, the following unrelated excessive force claims:  (1)  June 26, 2013 by Defendant Beaver (slapped in the face) ; (2) June 26, 2013 by Defendant Johnson  (severely twisted his arm) ; (3)  December 23, 2013 by Defendant Eck (slapped in the face twice);  (4) November 8, 2012 by Defendant Hackenberg (slammed into shower handle and punched) ; and (5)  October 17, 2012 (violently shaken several times )  and November 8, 2012 (head slammed into wall) by

Defendant Anderson are in violation of Federal Rule of Civil Procedure 20 and not properly joined with the claims relating to the purported events of July, 2013 .

Since the failure of Plaintiff to sufficiently identify his FTCA claims prevents disposition of the Defendants' failure to exhaust argument, Regassa will be afforded opportunity to file an amended complaint of no more then twenty-five (25) pages in length regarding his surviving allegations which states each claim he wishes to pursue in a clear and concise manner; clearly states which claims are being pursued under the FTCA; identifies all remaining defendant[s], and specifies the relief he is seeking.  See Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988). The amended complaint must satisfy the concerns set forth herein and only name defendants and set forth claims which have not otherwise been disposed of by this Memorandum Opinion and arise out of the same occurrence or series of occurrences, i.e. are directly related to the July 8, 2013 incident.

Plaintiff is again respectfully advised that in order to state a viable civil rights claim he must make a showing that the conduct complained of was committed by a person acting under color of law and that said conduct deprived him of a right, privilege, or immunity secured by the Constitution or by a statute of the United States.  Cohen v. City of Philadelphia, 736 F.2d 81, 83, (3d Cir. 1984). A prerequisite for a viable civil rights claim is that a defendant directed, or knew of

and acquiesced in, the deprivation of his constitutional rights.  <u>Monell v. Department of Social Serv. of the City of N.Y.</u>, 436 U.S. 658, 694-95 (1978); <u>Gay v. Petsock</u>, 917 F.2d 768, 771 (3d Cir. 1990); <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 n.7 (3d Cir. 1989).  This is the personal involvement requirement.  Civil rights liability may not be imposed on the principle of <u>respondeat</u> <u>superior</u>.  <u>Id.</u> at 106 (<u>citing</u> <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1976)).

Plaintiff is also reminded that in order to state a viable FTCA claim he must allege:  (1) that a duty was owed to him by a defendant; (2) there was a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss.  Regassa must also show that the claim was administratively exhausted and filed in a timely manner.

Regassa is forewarned that his amended complaint <u>must</u> be complete in all respects.  It must be a new pleading which stands by itself without reference to the complaint previously filed.  The amended complaint should set forth Plaintiff's claims in short, concise and legible statements and be limited to facts and surviving claims which are common to all remaining Defendants and which have not been disposed of by this Memorandum.  It should specify which actions are alleged as to which Defendants.

Failure of the Plaintiff to timely submit an amended complaint or otherwise respond to this Order will result in dismissal of his action for failure to prosecute. An appropriate Order will enter.

BY THE COURT:


  s/   Matthew W. Brann
Matthew W. Brann
United States District Judge