IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ADMASSU REGASSA,                  :
                                  :
            Plaintiff             :
                                  :
    v.                            :   CIVIL NO. 4:CV-14-1122
                                  :
C. BRININGER, ET AL.,             :   (Judge Brann)
                                  :
            Defendants            :

## MEMORANDUM

December 20, 2016

## Background

This pro se combined  Bivens[1]/Federal Tort Claims Act (FTCA)  action

was initiated by Admassu Regassa , an inmate presently confined at the United

States Penitentiary, Marion, Illinois.  The Plaintiff raises claims pertaining to his

prior confinement at the United States Penitentiary, Lewisburg, Pennsylvania

(USP-Lewisburg).

By Memorandum and Order dated September 4, 2015, Defendants' motion

for summary judgment was partially granted.  See  Doc. 44.  Summary judgment

---

[1]  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S.
388 (1971).

was granted in favor of the Defendants with respect to: (1) the <u>Bivens</u> claims against them in their official capacities; (2) all <u>Bivens</u> claims asserted against Warden Thomas, Associate Warden Wilson, and Captain Entzel on the basis of lack of personal involvement; and (3) the unsupported claims of conspiracy.  In addition, Regassa was directed to file and serve an amended complaint which complied with Federal Rules of Civil Procedure 8 and 20; clearly identified his surviving FTCA and <u>Bivens </u>claims; and addressed the concerns set forth in the Court's Memorandum.  Plaintiff thereafter filed an amended complaint.  <u>See</u>  Doc. 45.

By Memorandum and Order dated August 26, 2016, Defendant United States of America's motion for partial summary judgment was granted.  Summary judgment was granted in favor of the United States with respect to the FTCA claims of medical negligence.  <u>See</u> Doc. 92.

Remaining Defendants are the United States and the following twenty-three (23) USP-Lewisburg officials:  Correctional Officers C. Brininger, S. Argueta, A. Kranzel, J. Oldt, M. Erb, E. Kulp; N. Beaver, C. Wise, S. Buebendorf, J. Eck, and D. Johnson; Nurse Gregory George; Lieutenants Sherman, Saylor, A. Miller, Seeba, Carrasquilo, and Dowkus; Physician's Assistant (PA) Francis Fasciana; Doctor Kevin Pigos; Counselor M. Edinger; Disciplinary Hearing Officers (DHO)

A. Jordan and B. Chambers.

According to the amended complaint, prior to a July 8, 2013 disciplinary hearing, Plaintiff was threatened with physical harm by Counselor Edinger, Brininger, Kranzel, and Kulp. See Doc. 45, ¶ 63. Following conclusion of the hearing, Regassa states that he was physically assaulted by Correctional Officers Brininger, Kranzel and Kulp in a second floor hallway near the shower area. Defendants Bubendorf, Wise, and Kline are also described as having been involved in the incident. Brininger purportedly threw Regassa to the floor and along with other officers repeatedly kicked and stomped the inmate for approximately three minutes. Plaintiff asserts that he suffered multiple injuries. It is further alleged that in an effort to cover up the actions of the involved correctional staff members, Plaintiff was issued a falsified misconduct which charged him with assaulting Correctional Officer Brininger.

Following this incident, Regassa maintains that he was subjected to an unwarranted three (3) day placement in ambulatory restraints while confined in an unsanitary, bug-infested cell. Regassa additionally contends that the prison's medical staff acted improperly by failing to loosen his restraints and treat his wounds. Plaintiff elaborates that he was denied x-rays; therapy; pain medication; and a complete medical evaluation.

3

Presently pending is the individual Defendants' motion to dismiss and/or in the alternative a motion for  summary judgment with respect to Plaintiff's <u>Bivens</u> claims.  <u>See</u>  Doc. 46.  The opposed motion is ripe for consideration.

**<u>Discussion</u>**

Defendants assert that the <u>Bivens</u> portion of the amended complaint should not be allowed to proceed on the grounds that Regassa failed to exhaust his administrative remedies and that there is no basis for a constitutional claim against DHO Chambers.

**<u>Motion to Dismiss</u>**

The pending dispositive motion is supported by evidentiary materials outside the pleadings.  Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the motion which will be treated as solely seeking summary judgment with respect to

4

the Bivens claims.  See Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

## Summary Judgment

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Administrative Exhaustion**

Defendants contend that although Plaintiff exhausted an administrative appeal of the finding of guilt on the disciplinary charge issued to him on July 8, 2013 by Correctional Officer Brininger, "Regassa admits that he failed to submit timely administrative remedies concerning any of his civil rights claims."  Doc. 59,

6

p. 3.  They conclude that since Plaintiff has failed to provide a valid reason as to why he should be excused from compliance with the exhaustion requirement, entry of summary of summary judgment with respect to his <u>Bivens</u> claims is appropriate.

In his amended complaint, Plaintiff states that he "did everything possible ... to exhaust his administrative remedies."  Doc. 45, ¶ 67.  Regassa indicates that his attempts at exhaustion were rejected as being untimely.  <u>See id</u>. at ¶ 69.  Plaintiff argues that he was unable to timely seek administrative relief because he was weak and sick and the transfer of his inmate counselor to another unit prevented him from obtaining the required grievance forms.  However, Regassa  acknowledges that during this same time period he exhausted an administrative tort claim and an administrative appeal of a misconduct charge, both of which stemmed from the same events

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under that provision, administrative exhaustion is required "irrespective of the forms of relief sought and offered through administrative avenues."  <u>Porter v.</u>

Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6

(2001).  Claims for monetary relief are not excused from the exhaustion

requirement.  Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).  Dismissal of an

inmate's claim is appropriate when a prisoner has failed to exhaust his available

administrative remedies before bringing a civil rights action.  Ahmed v.

Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur

prior to filing suit, not while the suit is pending."  Tribe v. Harvey, 248 F.3d 1152,

2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645

(6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 127 S.Ct. 910, 923

(2007), stated that the primary purpose of the exhaustion requirement is to allow "a

prison to address complaints about the program it administers before being

subjected to suit, reducing litigation to the extent complaints are satisfactorily

resolved, and improving litigation that does occur by leading to the preparation of

a useful record."  Id.  The administrative exhaustion mandate also implies a

procedural default component.  Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the United States Court of Appeals for the Third Circuit, a

procedural default rule "prevents an end-run around the exhaustion requirement."

Id. at 230.  It also ensures "prisoner compliance with the specific requirements of

the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest."  Id.  Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations.  Woodford v. Ngo, 548 U.S. 81 (2006).

As correctly pointed out by Defendants, the BOP administrative review process for appeals from adverse DHO determinations is different from the agency's process for inmate grievance issues, such as civil rights claims. The BOP has a well established exhaustion process for appeals from adverse DHO decisions and a separate administrative review process for all other inmate grievance issues.

With respect to the later type of claim, the BOP has developed a  three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment (with the exception of DHO appeals).  See 28 C.F.R. §§ 542.10-542.19.  After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting  "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20)  calendar days "following the date on which the basis for the Request

occurred."[2]  See  28 C.F.R. § 542.14(a).

The Warden has twenty (20)  calendar days from the date the Request or Appeal is filed in which to respond."  See  28 C.F.R. § 542.18.  If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response.  See  28 C.F.R. § 542.15.  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response.  Id.  Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  Id.

The Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement.  Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75.  A more recent decision by the Third Circuit reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected.  Hill v. Smith, 186

---

[2]     DHO appeals are initiated with the BOP Regional Director.

Fed.  Appx. 271, 274 (3d Cir.  2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint.  See Jones v. Bock, 549 U.S. 199, 216 (2007);  see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d  568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[3]

Pursuant to BOP regulations, Plaintiff had twenty (20)  days following the July 8, 2013 incident in which to initiate a grievance regarding his assertions relating to being subjected to excessive force, placed in ambulatory restraints, and denial of proper medical care.  It remains undisputed that Regassa did not timely file a grievance.

As a result of the July 8, 2013 incident, Plaintiff was also issued a misconduct charge which accused him of spitting on Correctional Officer Brininger while being escorted back to his cell.  A DHO hearing on the misconduct

---

[3] In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

was conducted on August 21, 2013.  The undisputed record shows that during that proceeding, Plaintiff raised the argument that the misconduct charge was an attempt by correctional staff to cover the use of excessive force against the prisoner.  DHO Chambers ruled that the alleged use of excessive force against Regassa was not properly raised during the disciplinary hearing because it was not material to the issue of whether Regassa had spat upon an escorting officer.

As previously discussed, 28 C.F.R. § 542.10 states that a prisoner may file a grievance relating to any issue relating to any aspect of his/her own confinement. The undisputed record clearly shows that Plaintiff did not timely initiate any grievance within twenty (20) days of the July 8, 2013 incident.  The Plaintiff's contentions regarding the alleged improper  use of ambulatory restraints and purported improper medical care were clearly unrelated to the Plaintiff's pending misconduct proceedings.  As such, Regassa clearly failed to properly comply with the administrative exhaustion requirement by not timely initiating grievances pertaining to his alleged improper placement in ambulatory restraints and purported  denial of proper medical care.

In response to Plaintiff's contention that he should be excused from the exhaustion requirement because of poor health and counselor unavailability, Defendants have submitted a declaration under penalty of perjury by Counselor J.

Dilitz who indicates that he acted as Plaintiff's counselor from August 23, 2013 through December 10, 2013. Although Regassa had access to Dilitz several times each week during that period, Dilitz avers that the inmate never asked him for any administrative remedy forms.   Counselor Dilitz adds that Plaintiff alternatively could have submitted any completed grievances to the case and unit managers who were also regularly available on the cell block.  Dilitz further states that according to institutional records Regassa did not request any informal resolution forms between May-December, 2013.  See Doc. 60-2, Exhibit 9, p. 73, ¶ 6.  Furthermore, any such request for forms made by the Plaintiff  would have been granted.

Also submitted is a sworn declaration by Counselor R. Bingaman who is described as having  served as Plaintiff's counselor between December 2, 2012 to August 23, 2013.  See id. at Exhibit 10, p. 84.  Bingaman similarly avers that Regassa had access to his counselor several times each week but that the prisoner never requested any informal resolution forms even though any such routine request would have been granted.

Defendants have also provided a declaration by Unit Manager S. Stover who was assigned to Plaintiff's housing unit from August 17, 2012 to December 9, 2013.  See id. at Exhibit 11, p. 96.  Stover echoes Bingaman and Dilitz's statements regarding having inmates having regular access to administrative

remedy forms and adds that at no time did Regassa ever complain of not having access to the administrative remedy system.

The declarations of Bingaman, Stover,  and Dilitz along with copies of submitted institutional records clearly undermine Plaintiff's assertion that a lack of an assigned counselor prevented him from timely pursuing administrative relief. This determination is bolstered by the fact that during the same time frame Plaintiff exhausted both  an administrative tort claim and a DHO appeal.

Defendants have also submitted a declaration under penalty of perjury by USP-Lewisburg Physician A. Edinger who states that based on a review of Plaintiff's institutional medical records, he did not suffer from any medical condition between July-December 2013 which would have prevented him for pursuing administrative relief.  See id. at p. 110, ¶ 6.  Accompanying the declaration are copies of Regassa's relevant prison medical records.

Based upon consideration of the above undisputed facts, there is no basis for a determination that Plaintiff should be excused from compliance with the exhaustion requirement.  It is apparent that Regassa had both the means and the opportunity to initiate administrative grievances regarding his claims of improper placement in ambulatory restraints and denial of medical care.  Defendants have established that those claims were not administratively exhausted and Plaintiff has

14

not shown that he should be excused from the administrative exhaustion requirement.  Accordingly, the request for entry of summary judgment on the basis of non-exhaustion will be granted with respect to Regassa's <u>Bivens</u> claims of placement in ambulatory restraints and denial of proper medical care.

However, since Plaintiff contends that the misconduct charge was an effort to cover up the use of excessive force, the issue of non-exhaustion with respect to that claim is more complicated.  As suggested by DHO Chambers,  Regassa arguably should have raised his excessive force claim in an administrative grievance.  It is also noted that if an inmate raises an issue that cannot be resolved through the administrative remedy program, the BOP is mandated to refer the inmate to the appropriate administrative procedure.

 There is no discernible argument by Plaintiff that he did not pursue a timely grievance because he was of the belief that the excessive force claim would have be pursued via an administrative appeal of the adverse DHO decision.  However, it is equally undisputed that Regassa's pending claim of excessive was nonetheless asserted during his disciplinary hearing and thereafter included in his administrative misconduct appeal.

While the DHO opined that the assertion of excessive force was not properly raised in the misconduct proceedings, the time frame in which to initiate an

excessive force grievance had already expired at the time of the DHO proceedings. Therefore, by the time DHO Chambers expressed to Plaintiff that the excessive force claim would not be entertained, the inmate had no other means to pursue administrative relief.  Given Plaintiff's claim that the misconduct was fabricated to cover the alleged excessive force, I agree that it was reasonable for Plaintiff to believe that his claim should be raised before the DHO.  Based upon those circumstances, the request for dismissal of the excessive force claim on the basis of non-exhaustion will be denied.

## **DHO Chambers**

Defendants also assert that DHO Chambers is entitled to entry of summary judgment because Plaintiff has failed to allege a viable due process claim against that defendant.  See  Doc. 59, p. 9.  Alternatively, it is asserted that DHO Chambers is entitled to qualified immunity.[4]

Plaintiff alleges that DHO Chambers acted with bias by premising a finding

---

[4]   Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).

of guilt based upon the correctional officers' allegedly falsified accounts of the July 8, 2013 incident. It is undisputed that Plaintiff was issued a misconduct charge which alleged that he spat upon a correctional officer who was escorting him back to his cell. DHO Chambers presided over the resulting disciplinary hearing. Plaintiff requested and was provided with representation by a staff representative for the purposes of that proceeding. After consideration of the evidence, notably written eyewitness reports by two correctional officers other that Brininger, Chambers rendered a finding of guilt and imposed multiple sanctions including a term of disciplinary segregation, loss of commissary, telephone and visitation privileges. See Doc. 60-2, p. 70. Regassa was not, however, sanctioned to a loss of good conduct time. See id.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." The Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously

unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Meachum v. Fano, 427 U.S. 215, 223-26 (1976). In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Wolff, 418 U.S. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal. The Third Circuit and other courts

applied the <u>Wolff</u> principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead in disciplinary or administrative segregation.  <u>E.g.</u>, <u>Grillo v. Coughlin</u>, 31 F.3d 53 (2d Cir. 1994); <u>Griffin v. Spratt</u>, 969 F.2d 16 (3d Cir. 1992); <u>Cook v. Lehman</u>, 863 F. Supp. 207 (E.D. Pa. 1994).

However, the Supreme Court's subsequent decision in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  <u>Id</u>. at 481.  In <u>Sandin</u>, the Supreme Court reasoned, <u>inter alia</u>, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  <u>Id</u>. at 485.  The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. <u>Id</u>. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in <u>Wolff</u> were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  <u>Id</u>.   The <u>Sandin</u> Court  relied on three factors in making this determination: (1)confinement in disciplinary segregation mirrored conditions of

19

administrative segregation and other forms of discretionary confinement; (2) based

on a comparison between inmates inside and outside segregation, the state's action

in placing the inmate there did not work a major disruption in the inmate's

environment; and (3) the state's action did not inevitably affect the duration of

inmate's sentence.

Courts within this circuit, applying Sandin in various actions, have found no

merit in procedural due process claims presented regarding institutional

disciplinary hearings which result in disciplinary custody placement.  See Torres v.

Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably

anticipate transfer to disciplinary custody, placement in segregation as a

disciplinary sanction did not implicate a protected liberty interest); Griffin v.

Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest in avoiding fifteen

(15) month placement in administrative custody because said confinement was not

atypical); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7)

months of disciplinary confinement did not implicate liberty interest); Diaz v.

Canino, 502 Fed. Appx. 214, 218 (3d Cir.  2012)(a 360 day term of disciplinary

confinement did not implicate a protected liberty interest).

Pursuant to the above decisions, this Court agrees that Plaintiff's claims against

DHO Chambers cannot proceed because the resulting disciplinary sanctions did not

impose an atypical and significant hardship as contemplated under <u>Sandin</u>.

## **<u>Conclusion</u>**

In conclusion, it is the determination of this Court that entry of summary judgment in favor of the Defendants is appropriate with all claims relating  to Regassa's placement in ambulatory restraints and his allegations of improper medical care because the Plaintiff failed to exhaust his available administrative remedies before pursuing those claims in federal court.   However, since Plaintiff did reasonably pursue administrative relief regarding his assertions of being subjected to excessive force on July 8, 2013, the request for summary judgment on the grounds of non-exhaustion will be denied with respect to that allegation.

Second, I agree that Plaintiff has not set forth a viable claim that his constitutional rights were violated by DHO Chambers since the disciplinary sanctions imposed against the Plaintiff did not implicate a protected liberty interest. Accordingly, Defendant Chambers is entitled to entry of summary judgment.

In sum, the claims remaining before this Court are the <u>Bivens</u> claims that Plaintiff was subjected to the use of excessive force on July 8, 2013 and the related FTCA claims of assault and battery.   Also surviving are the FTCA claims of negligence and assault pertaining to Regassa's placement in ambulatory restraints. Deadlines for completion of discovery and submission of any additional

dispositive motions will be established.  An appropriate Order will enter.


BY THE COURT:


  s/   Matthew W. Brann
Matthew W. Brann
United States District Judge