# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ADMASSU REGASSA, | No. 4:14-CV-01122 |
|---|---|
| Plaintiff, | (Judge Brann) |
| v. | |
| C. BRININGER, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 14, 2019

## I.    BACKGROUND

Admassu Regassa, a federal inmate previously confined at United States Penitentiary Lewisburg, filed this civil rights complaint—which he later amended—alleging that numerous defendants violated his Constitutional rights.[1]  As relevant here, Regassa asserts that Defendants used excessive force when they assaulted him on July 8, 2013 ("Alleged Assault"), and employed overly-tight restraints from July 8, 2013, until July 10, 2013 ("July Restraint").[2]  Regassa asserts *Bivens*[3] claims for violations of his Eighth Amendment rights, and Federal Torts Claim Act[4] ("FTCA")

---

[1]   Docs. 1, 45.

[2]   Doc. 45 at 5-16.

[3]   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[4]   28 U.S.C. §§ 2671-80

claims for assault related to the Alleged Assault, and assault and negligence related to the July Restraint.[5]

Over the course of several years, this Court issued a series of rulings that narrowed the relevant issues and dismissed several defendants from the action. Because much of that history is not directly relevant to the pending motions and the parties are familiar with the procedural history of this case, the Court will not recite any non-relevant procedural history here.

In December 2016, this Court granted in part and denied in part Defendants' motion for summary judgment on Regassa's *Bivens* claims ("December 2016 Order").[6] The Court determined that Regassa failed to exhaust his administrative remedies—as required by the Prison Litigation Reform Act[7] ("PLRA")—with respect to his July Restraint claims, as he did not file a timely administrative grievance and no circumstances would excuse his failure to so do.[8] Specifically, the Court concluded that the evidence demonstrated that Regassa never requested a grievance form despite having several opportunities to request such forms, and the uncontroverted evidence demonstrated that no medical issues would have hindered Regassa's ability to file a grievance.[9] The Court determined, however, that the

---

[5]   Doc. 45 at 14-15, 17-18, 20.
[6]   Docs. 111, 112.
[7]   42 U.S.C. § 1997e.
[8]   Doc. 111 at 11-14.
[9]   *Id.* at 12-15.

failure to exhaust administrative remedies as to the Alleged Assault claims should be excused because Regassa fully pursued the issue as a defense to a misconduct charge issued as a result of that incident.[10] The Court thus permitted *Bivens* and FTCA claims related to the Alleged Assault to proceed against Defendants Brininger, Kanzel, Bubendorf, Wise, Kline, and Kulp, as well as FTCA claims related to the July Restraint.[11]

Defendants thereafter moved for summary judgment on the merits of Regassa's remaining claims, which the Court granted in part and denied in part in November 2018 ("November 2018 Order").[12] The Court determined that Bubendorf and Wise could not be held liable because there was no evidence that either individual was involved in the Alleged Assault.[13] The Court further granted summary judgment in favor of Defendants as to the FTCA July Restraint claims after concluding that the evidence unambiguously demonstrated that correctional officers did not act with negligence and did not assault Regassa during the use of restraints.[14]

In April 2018 Regassa filed a motion to reconsider the December 2016 Order, asserting that his failure to exhaust administrative remedies should be excused.[15]

---

[10] *Id.* at 15-16.

[11] Doc. 112.

[12] Docs. 179, 200, 201.

[13] Doc. 200 at 6-10.

[14] *Id.* at 10-16.

[15] Docs. 192, 193.

Magistrate Judge Martin C. Carlson issued a Report and Recommendation[16] recommending that this Court grant the motion in part and permit the parties an opportunity to submit additional briefs or evidence—in accordance with *Paladino v. Newsome*, 885 F.3d 203, 211 (3rd Cir. 2018)—related to the exhaustion of administrative remedies. The Court adopted the recommendation and provided the parties with an opportunity to submit supplemental briefs and materials; both parties submitted timely supplements.[17] Thereafter, Defendants filed a motion to reconsider the December 2016 Order, contending that the Court erred in excusing Regassa's failure to exhaust his administrative remedies relative to the Alleged Assault.[18]

Finally, Regassa has filed a motion to reconsider the November 2018 Order.[19] Regassa contends that there is a genuine issue of material fact as to whether Bubendorf and Wise were present and participated in the Alleged Assault.[20] Regassa also asserts that his FTCA claims for assault and negligence related to the July Restraint should be reinstated because Defendants faked the video footage and medical records that this Court relied upon in granting summary judgment.[21] These matters are now ripe for consideration.

---

[16] Doc. 218.

[17] Docs. 221, 225, 227.

[18] Docs. 223, 224.

[19] Docs. 202, 203.

[20] Doc. 203 at 6-7.

[21] *Id.* at 7-9.

4

## II. DISCUSSION

To properly support a motion for reconsideration, a party must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[22] As to the third ground, in reviewing for clear error, reconsideration is warranted only if the "[C]ourt is left with the definite and firm conviction that a mistake has been committed."[23] "Thus, [to warrant reconsideration, the parties] must show more than mere disagreement with the earlier ruling; [they] must show that the . . . Court committed a direct, obvious, or observable error, and one that is of at least some importance to the larger proceedings."[24]

As to the Court's reexamination of whether Regassa exhausted his administrative remedies, "[s]ummary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact, and thus the movant is entitled to judgment as a matter of law."[25] "A dispute is genuine if a reasonable trier-of-fact

---

[22] *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (ellipsis and internal quotation marks omitted).

[23] *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008) (internal quotation marks omitted).

[24] *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (brackets, quotation marks, and citation omitted).

[25] *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 309 (3d Cir. 2018) (internal quotation marks omitted).

could find in favor of the non-movant, and material if it could affect the outcome of the case."[26] In considering a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[27]

### A. Defendants' Motion for Reconsideration

Defendants assert that the Court should reconsider the December 2016 Order, as it clearly erred in concluding that Regassa's failure to exhaust his administrative remedies should be excused with regard to the Alleged Assault claims.[28] Defendants contend that the Court's conclusion is contrary to the United States Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016), wherein the Supreme Court held that pursuing action outside of the established grievance process is insufficient to excuse the failure to exhaust administrative remedies.[29] In response, Regassa argues that the motion is untimely and, in any event, his failure to timely exhaust administrative remedies should be excused because Defendants denied him access to the proper grievance forms and he was too sick and weak to file grievances.[30]

As to Regassa's assertion that Defendants' motion for reconsideration is untimely, Local Rule 7.10 requires that, other than a motion to alter or amend the

---

[26] *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 167 (2018).

[27] Fed. R. Civ. P. 56(c)(3)

[28] Doc. 224 at 4-5.

[29] Doc. 224 at 6-11.

[30] Doc. 226.

6

judgment under Fed. R. Civ. P. 59(e),[31] "[a]ny motion for reconsideration or reargument must be . . . filed within fourteen (14) days after the entry of the order concerned." Defendants filed their motion for reconsideration in March 2019, more than two years after the December 2016 Order was entered on the docket. Thus, under the Court's Local Rules, Defendants' motion is untimely.

Nevertheless, application of the Local Rules rests within the sound discretion of this Court,[32] and there are numerous examples of jurists within this District forgiving noncompliance with Local Rule 7.10.[33] Thus, a district court may, in the exercise of its inherent discretion, "depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rules to his detriment."[34] With this framework in mind, the Court finds it appropriate to excuse Defendants' noncompliance with the Local Rules.

---

[31] Because the Order of which Defendants seek reconsideration did not enter final judgment against any party, their motion does not implicate Rule 59(e). *See* Fed. R. Civ. P. 54(b) (order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties" and is not a final judgment).

[32] *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (noting that district courts are afforded discretion in the interpretation and application of their local rules because "the District Court is in the best position to determine the extent of a party's noncompliance with [its] Local Rule . . . as well as the appropriate sanction for such noncompliance"). *See also* Local Rule 1.3 (permitting courts to "suspend these rules in individual cases by written order").

[33] *See, e.g.*, *Jones v. Tritt*, No. 1:16-CV-1537, 2019 WL 719636, at *2 (M.D. Pa. Feb. 20, 2019); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:06-CV-1105, 2011 WL 4916397, at *3 (M.D. Pa. Oct. 17, 2011).

[34] *United States v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000).

As to the first consideration, there is a compelling rationale for departing from Local Rule 7.10.  Motions for reconsideration exist for the purpose of permitting courts to recognize that an incorrect decision was reached and correct that decision without the necessity of an appeal.  As the United States Court of Appeals for the Fifth Circuit has recognized, "[t]he primary purpose of a motion for reconsideration is judicial economy," as "plenary consideration of a question of law on appeal ordinarily consumes more time than disposition of a petition for rehearing."[35] Similarly, the United States Court of Appeals for the Third Circuit has held that "it [i]s not consistent with the wise exercise of discretion for the District Court to" decline to consider a motion for reconsideration where the "defense [raised] in [a] motion for reconsideration [i]s . . . fundamental" to the case.[36]

Defendants' motion for reconsideration implicates both important considerations.  As discussed below, the Court agrees that the basis of its decision to excuse Regassa's failure to exhaust his administrative remedies was erroneous.  In view of the strong possibility that the decision would be reversed on appeal, judicial resources would be conserved by addressing the merits of Defendants' motion for reconsideration.  Moreover, given that Defendants raise an issue that is

---

[35] *Simmons v. Reliance Standard Life Ins. Co. of Tex.*, 310 F.3d 865, 869 (5th Cir. 2002) (brackets and internal quotation marks omitted).

[36] *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999).

8

fundamental to these proceedings, it is critical that the Court consider the merits of their argument.[37]

Second, addressing the merits of Defendants' motion for reconsideration would not unfairly prejudice Regassa. Regassa recently moved for reconsideration of the December 2016 Order, indicating in his belief that at least part of that Order should be revisited.[38] Moreover, although Regassa's motion relied on newly-discovered evidence, he did not begin to seek that that information until four months after the December 2016 Order was issued,[39] indicating a distinct lack of urgency in complying with the 14-day filing deadline, and undermining any contention that Regassa relied on the Local Rules to his own detriment. Given this belated effort from Regassa, it is difficult to conceive of prejudice resulting from Defendants' untimely motion for reconsideration.

More importantly, in Regassa's motion for reconsideration and brief in opposition to Defendants' motion for reconsideration, he fully briefed and argued legitimate grounds to excuse his failure to exhaust administrative remedies, which mitigates—if not fully extinguishes—any prejudice arising from consideration of

---

[37] *See Rinaldi v. United States*, 904 F.3d 257, 264-65 (3d Cir. 2018) (exhaustion of administrative remedies is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time").

[38] Additionally, in his brief in opposition to the motion for reconsideration, Regassa relies on grounds that this Court explicitly rejected in the December 2016 Order (*see* Doc. 226), which implicitly invites reconsideration of that Order.

[39] Doc. 192 at 2.

9

Defendants' motion.[40]  In short, Regassa has pointed to no prejudice resulting from Defendants' belated motion, and the Court can discern none from the record.  The Court will therefore consider the merits of Defendants' motion for reconsideration.

Turning to the merits, the December 2016 Order noted that it was "undisputed that Regassa did not timely file a grievance" related to his *Bivens* claims.[41]  Nevertheless, it was "equally undisputed that Regassa's pending claim of excessive was . . . asserted during his disciplinary hearing and thereafter included in his administrative misconduct appeal."[42]  Because "it was reasonable for [Regassa] to believe that his claim should be raised" in the disciplinary hearing, the Court excused Regassa's failure to exhaust his administrative remedies.[43]

The Court agrees with Defendants that this approach is foreclosed by the Supreme Court's decision in *Ross*.  There, the plaintiff was assaulted by two correctional officers and thereafter reported the assault to a senior officer, who "referred the incident to the Maryland prison system's Internal Investigative Unit (IIU)."[44]  "After conducting a year-long inquiry into the beating, the IIU issued a final report condemning" the actions of one of the officers.[45]  The plaintiff brought

---

[40] *See* Docs. 193, 222, 227.

[41] Doc. 111 at 11.

[42] *Id.* at 15.

[43] *Id.* at 16.

[44] 136 S. Ct. at 1855.

[45] *Id.*

10

suit and acknowledged that he did not pursue remedies through the established grievance process, but instead relied solely on the IIU process to exhaust his administrative remedies.[46] The United States Court of Appeals for the Fourth Circuit determined that the plaintiff's failure to exhaust his administrative remedies should be excused because he "reasonably—even though mistakenly—believed that he had sufficiently exhausted his remedies" through the IIU process.[47]

The Supreme Court vacated the Fourth Circuit's decision, concluding that "a court may not excuse a failure to exhaust [administrative remedies], even to take [special] circumstances into account."[48] The Supreme Court emphasized that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"[49] and therefore held that courts may only excuse the failure to exhaust administrative remedies if such remedies were unavailable, and not because a litigant mistakenly pursued his grievance in the wrong forum.[50]

Similar to the plaintiff in *Ross*, here Regassa failed to pursue remedies through the established grievance process, but instead mistakenly asserted his assault claim in an alternate proceeding—his disciplinary hearing. The Court believed that

---

[46] *Id.*

[47] *Id.* at 1856 (internal quotation marks omitted).

[48] *Id.*

[49] *Id.* at 1857.

[50] *Id.* at 1858-59.

11

Regassa's mistake was a reasonable one, and found that special circumstances militated in favor of excusing his failure to exhaust administrative remedies.[51] However, that conclusion is contrary to the holding in *Ross*, and must therefore be vacated and reconsidered.

### B. Exhaustion of Administrative Remedies

The Court will vacate the December 2016 Order in its entirety with regard to the issue of exhaustion, but this does not end the Court's inquiry. While Regassa acknowledges that he did not exhaust his administrative remedies, he contends that his failure to exhaust should be excused because such remedies were not actually available.[52] Regassa relies on two primary arguments to support his contention that remedies were not available: (1) he was too sick and weak to exhaust administrative remedies; and (2) he requested grievance forms several times but was denied those forms by correctional officers.[53]

The PLRA requires that federal prisoners exhaust all available administrative remedies prior to filing suit in federal court.[54] "Proper exhaustion demands

---

[51] Doc. 111 at 16.

[52] Docs. 193, 222, 227.

[53] Doc. 193 at 12; Doc. 222 at 13-15; Doc. 227 at 12-19.

[54] *Rinaldi*, 904 F.3d at 264-65.

compliance with an agency's deadlines and other critical procedural rules . . ."[55]  To exhaust administrative remedies in federal prison:

> As a general matter, inmates must (1) attempt an informal resolution with staff at the institution; (2) file a formal complaint with the institution; (3) file an appeal to the appropriate Regional Director if the inmate is not satisfied with the institution's response to the formal complaint; and (4) file another appeal to the General Counsel if the inmate is not satisfied with the Regional Director's response to the appeal.[56]

Despite containing a strict exhaustion requirement, "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'"[57]  Thus,

> the Supreme Court [has] identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[58]

---

[55]  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

[56]  *Rinaldi*, 904 F.3d at 264-65 (internal citations omitted).

[57]  *Id.* at 266 (quoting *Woodford*, 548 U.S. at 93).

[58]  *Id.* at 266-67 (quoting *Ross*, 136 S. Ct. at 1859-60).

"The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."[59] "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."[60]

It is undisputed that Regassa failed to exhaust his administrative remedies, and the burden therefore falls on him to demonstrate that such remedies were unavailable. The Court finds that Regassa cannot sustain his burden.

As to Regassa's contention that he was medically incapable of completing a grievance form, Defendants submitted a declaration from A. Edinger—a physician employed by the Bureau of Prisons—who states that he reviewed Regassa's medical records and Regassa's "medical condition was not such that would have precluded him from being able to complete administrative remedy forms."[61] Defendants have also submitted Regassa's medical records, none of which demonstrate any serious physical ailments or pain that would have prevented him from completing a grievance.[62] To the contrary, Regassa's medical records demonstrate a full range of motion and note that—at its zenith—Regassa's pain was described as a 4 out of 10, but that Regassa frequently reported no pain at all.[63] Although Regassa claims that

---

[59] *Id.* at 268.

[60] *Id.*

[61] Doc. 60-2 at 110.

[62] *See id.* at 111-56.

[63] *Id.* at 112-13, 122, 125, 129, 131, 134, 136, 139, 142, 146, 149, 152, 154-55.

his medical records were "repeatedly and deliberately falsified,"[64] he provides no evidence other than his own bald and speculative assertion, ipse dixit, to support his accusation. That assertion is insufficient to undermine the veracity of Defendants' evidence.[65]

Further undercutting Regassa's claim that he was physically incapable of utilizing his administrative remedies is the fact that he was able to exhaust his appeal of a disciplinary result well prior to the date that he submitted an administrative grievance. The record reflects that on September 6, 2013, Regassa appealed a disciplinary decision rendered against him[66] and was thus physically capable of completing a grievance form by—at the latest—early September 2013. Nevertheless, Regassa did not file a grievance related to his *Bivens* claims until October 15, 2013, over one month later.[67] Even if this Court were to conclude that Regassa's initial failure to file a grievance should be excused due to medical incapacity, using September 6, 2013 as a guidepost for when Regassa was able to draft a grievance, his October 15, 2013 grievance would still be untimely by nineteen

---

[64] Doc. 227 at 17.

[65] *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment").

[66] Doc. 60-2 at 21, 38.

[67] *Id.* at 22.

days,[68] and Regassa's failure to exhaust his administrative remedies therefore may not be excused on the basis of medical incapacity.

Regassa next asserts that, from August 11, 2013, until October 1, 2013, he requested grievance forms but was denied those forms by prison officials.[69] This contention is insufficient to excuse Regassa's failure to exhaust for two reasons.[70] First, although Regassa asserts that he began requesting administrative grievance forms on August 11, 2013,[71] the incidents of which he sought to complain ended by July 10, 2013, and thus any grievance was due on or before July 30, 2013. Because Regassa's grievance would have been untimely even if Defendants provided him with grievance forms on August 11, 2013, the prison officials' purported denial of said forms would not have been the cause for Regassa's failure to exhaust administrative remedies, and thus cannot excuse such failure.

Second, while Regassa contends that he was unable to request grievance forms—and when he could make such a request those forms were denied—Defendants have submitted evidence demonstrating that Regassa had numerous opportunities to request grievance forms but failed to so do and was never denied

---

[68] *See* Doc. 60 at 16; 28 C.F.R. § 542.14 (noting that grievance must be filed within 20 days of the date of incident of which prisoner complains).

[69] Doc. 222 at 14-15; Doc. 227 at 15-18.

[70] The Court recognizes that, as a general matter, a prisoner's failure to exhaust administrative remedies is "excused if there were a failure to provide grievance forms." *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).

[71] Doc. 226 at 12.

16

grievance forms. J. Diltz, Regassa's counselor from July 8, 2013 until December 9, 2013, provided a declaration—supported by accompanying institutional records—stating that Regassa had access to his counselor and other prison officials several times each week, but that he did not request an administrative grievance form between May and December 2013.[72] Similarly, R. Bingaman and S. Stover attest that Regassa never requested a grievance form during that time period and would have been given a grievance form if he had requested one.[73]

Although Regassa contends that these declarations are perjurious and unworthy of credence because he actually filed an informal grievance on September 5, 2013,[74] there is no support for this assertion. Rather, the record shows that Regassa filed an appeal of his disciplinary hearing result on September 6, 2013.[75] This does not show that Regassa requested or filed an administrative grievance. This distinction is critical; none of the declarants assert that Regassa did not request *any* forms, they simply assert that Regassa never requested *administrative grievance* forms. Moreover, Regassa's assertions are facially inconsistent. On the one hand, he asserts that he was denied grievance forms from August until December 2013[76]

---

[72] Doc. 60-2 at 72-73; *see id.* at 75-83.

[73] *Id.* at 84-85, 96-97.

[74] Doc. 193 at 12; Doc. 227 at 15-16.

[75] Doc. 60-2 at 21.

[76] Doc. 227 at 12.

and, on the other hand, asserts that he managed to complete and submit a grievance form in September 2013.[77] These assertions cannot both be accurate.

For those reasons, it is apparent that Regassa's failure to exhaust his administrative remedies may not be excused. Consequently, the Court will reaffirm its conclusion that Regassa failed to exhaust his administrative remedies as to the July Restraint. Upon reconsideration of its earlier conclusion, the Court further concludes that Regassa failed to exhaust his administrative remedies as to the Alleged Assault, and such failure may not be excused.

### C. Regassa's Motion for Reconsideration

Finally, Regassa has moved for reconsideration of the Court's November 2018 Order in which this Court held that Bubendorf and Wise cannot be held liable for the Alleged Assault because no evidence demonstrated their personal involvement in the alleged constitutional violations, and dismissed the FTCA claims related to the July Restraint.[78]

Given the Court's conclusion that all *Bivens* claims must be dismissed due to Regassa's failure to exhaust his administrative remedies, the legal and factual bases for the November 2018 Order are no longer relevant, as the *Bivens* claims analyzed therein will be dismissed from this case. Regassa's request for reconsideration of that portion of the November 2018 Order is therefore moot and will be denied in part

---

[77] Doc. 193 at 12; Doc. 227 at 15-16.
[78] Docs. 200, 201, 202.

as such. Moreover, Defendants' brief in opposition[79] to Regassa's motion accurately details the reasons why Regassa's motion should be denied and, for the reasons set forth in that brief,[80] the Court will deny Regassa's motion to reconsider the November 2018 Order as it pertains to the FTCA July Restraint claims.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for reconsideration, deny Regassa's motion for reconsideration, and grant judgment in favor of Defendants with respect to all *Bivens* claims due to Regassa's failure to exhaust his administrative remedies.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[79] Doc. 204.

[80] Notably, while Regassa argues that Defendants faked the video and medical evidence upon which the Court relied in granting summary judgment, Regassa offers nothing other than his own speculative assertions to support his claim.