# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADMASSU REGASSA, | No. 4:14-CV-01122 |
| Plaintiff, | (Judge Brann) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### JULY 29, 2020

## I.   BACKGROUND

Admassu Regassa, a federal inmate previously confined at United States Penitentiary Lewisburg ("USP Lewisburg"), filed this civil rights complaint—which he later amended—alleging that numerous defendants violated his Constitutional rights.[1] In his complaint Regassa asserted that several federal prison employees used excessive force and assaulted him when they subdued and then placed him in restraints on July 8, 2013.[2] Regassa asserted *Bivens*[3] claims for violations of his Eighth Amendment rights, and Federal Torts Claim Act[4] ("FTCA") claims for assault.[5]

---

1  Docs. 1, 45.
2  Doc. 45 at 5-16.
3  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
4  28 U.S.C. §§ 2671-80
5  Doc. 45 at 14-15, 17-18, 20.

Over the course of several years, this Court issued a series of rulings that narrowed the relevant issues and dismissed several defendants from the action. In December 2016, this Court granted in part and denied in part Defendants' motion for summary judgment, and permitted *Bivens* and FTCA claims related to the alleged assault to proceed against C. Brininger, A. Kranzel, S. Buebendorf, C. Wise, CO Kline, and E. Kulp.[6] In November 2018, the Court granted in part Defendants' second motion for summary judgment, and determined that Buebendorf and Wise could not be held liable because there was no evidence that either individual was involved in the July 8, 2013 incident.[7] The court permitted *Bivens* claims to proceed against Brininger, Kranzel, Kline, and Kulp, together with the FTCA claim against the United States.

Finally, in August 2019, this Court granted Defendants' motion for reconsideration and entered judgment in favor of Defendants as to all *Bivens* claims after concluding that Regassa failed to exhaust his administrative remedies.[8] Thus, the sole remaining claim in this matter is Regassa's FTCA assault claim related to the alleged assault on July 8, 2013.

Set forth below are this Court's findings of fact and conclusions of law following a bench trial that was conducted on June 24, 2020. In accordance with the following reasoning, this Court concludes that Regassa has failed to prove that he

---

[6] Docs. 111, 112.
[7] Doc. 200 at 6-10.
[8] *Id.* at 14-38; Doc. 231.

was unlawfully assaulted or battered on July 8, 2013. Consequently, the Court will enter judgment in favor of the United States.

## II. FINDINGS OF FACT

**Relevant Individuals and Conditions at USP Lewisburg**

1. On July 8, 2013, Plaintiff Admassu Regassa was an inmate confined in the Special Management Unit ("SMU") at USP Lewisburg.[9]

2. On that date, Cody Brininger was a senior officer employed by the Federal Bureau of Prisons. As a senior officer at USP Lewisburg, Brininger's duties included transporting prisoners to and from prison disciplinary hearings.[10]

3. The SMU was created "for inmates who had trouble existing . . . in other prisons to . . . receive help with psychology, education and other programs so that they could integrate back into the regular inmate population, due to their disruptive history or their history of misconduct while they were in an open population."[11] The SMU is more restrictive than all other federal prisons with the exception of the supermax facility in Colorado, and inmates in the SMU never leave their cells without hand restraints and a prison official present to control their movements.[12]

---

[9] Doc. 333 at 149
[10] *Id.* at 148-49.
[11] *Id.* at 116.
[12] *Id.* at 116-17.

4. Officers at the SMU must be extremely attentive since inmates at the SMU have a demonstrated history of "disruptive" behavior, particularly when moving an inmate, as there is a significant risk of violence during transport.[13]

5. BOP regulations permit prison officials to use force against a prisoner only to (1) gain control of inmates, (2) ensure the safety of inmates, staff and others, (3) to prevent serious property damage, or (4) to ensure institution security and good order. Officials may only use the amount of force necessary to accomplish those goals.[14]

**July 8, 2013 Use of Force**

6. On July 8, 2013, Brininger was responsible for transporting Regassa to and from a disciplinary hearing. On that day, at approximately 1:09 p.m., Brininger escorted Regassa from such a hearing. Regassa was handcuffed with his hands behind his body during the escort, and Brininger was gripping those handcuffs with his right hand.[15]

7. Regassa was initially calm but, as he left the hearing office, became agitated and yelled at the hearing officer.[16]

8. As Brininger and Regassa approached the landing in the second-floor stairwell, Regassa stopped walking and refused Brininger's orders to continue

---

[13] *Id.* at 117.
[14] *Id.* at 121.
[15] *Id.* at 149-52, 155.
[16] *Id.* at 151.

walking. Regassa then abruptly turned to his left and spit on Brininger; the spittle struck Brininger on his left shoulder and face.[17]

9. Regassa's turning motion pulled Brininger's hand and arm forward, which in turn jeopardized Brininger's control over Regassa.[18]

10. To regain control of Regassa, Brininger "wrapped [Regassa] up by the midsection and drove him to the floor." Brininger chose to drive Regassa to the floor because Brininger's right hand and arm were outstretched, meaning he did not "have any purchase on [Regassa's] hand restraints."[19]

11. Brininger believed that such action was necessary to maintain control of Regassa—which in turn permitted Brininger to protect himself and Regassa—and was proper under the controlling regulations.[20]

12. As Brininger held Regassa on the ground, other officers arrived to assist. Brininger ordered Regassa to stop resisting the officer but, instead of ceasing to struggle, Regassa screamed, yelled, and kicked at the responding officers.[21]

---

[17] *Id.* at 151-52, 160-62, 185.
[18] *Id.* at 152, 161.
[19] *Id.* at 152-53.
[20] *Id.* at 153, 175. Lieutenant Matthew Saylor read the incident report that Brininger created and concurred that, based upon his 26 years of experience as a correctional officer—during which time he was responsible for training new employees on the appropriate use of force—Brininger's actions were appropriate because Regassa's actions "would have led me to believe that the inmate was displaying clear signs of imminent violence and was about to assault someone or hurt himself" and "placing an inmate on the ground takes the inmate's ability away to break free from staff" or kick them. (*Id.* at 127; *see id.* at 115-16, 126-27). Officers Kranzel and Kulp concurred that, based on their training and experience, the use of force was appropriate. (*Id.* at 182, 197-98).
[21] *Id.* at 153-54, 188-89.

13. Officers Adam Kranzel and Eric Kulp were present during the incident and assisted Brininger in controlling Regassa before they were all relieved by other officers.[22]

14. Officers Kranzel and Kulp confirmed that they witnessed Regassa spit on Brininger, and Brininger then drove Regassa to the ground.[23]

15. No officer punched, kicked, hit, stomped on, or otherwise attacked Regassa on July 8, 2013.[24]

**Regassa's Injuries**

16. Shortly after Brininger's use of force, Paramedic Matthew Barth assessed Regassa for injuries.[25] During such examinations Barth checks for any physical trauma or injuries and checks the inmate's pulse and circulation.[26]

17. Barth's examination of Regassa was unremarkable and revealed no significant trauma, and Regassa did not appear to be in any acute distress.[27] Regassa's pulse and capillary refill were good, although he complained of chest pain and

---

[22] *Id.* at 165, 181-82, 195-97. Kranzel recalled that he was approximately ten to fifteen feet away when the incident began (*id.* at 186), while Kulp was unable to recall how far away he was. (*Id.* at 201).
[23] *Id.* at 181, 196-97.
[24] *Id.* at 158, 182, 198, 210.
[25] *Id.* at 207-09, 211-12.
[26] *Id.* at 209, 211-12.
[27] *Id.* at 212-13, 240.

6

he had swelling from a laceration above his right eye and bleeding from his nose.[28] None of these injuries required follow-up care.[29]

18. Although medical professionals did not conduct an internal examination of Regassa, the external examination permitted them to conclude that Regassa did not suffer internal injuries. Specifically, internal trauma often results in an elevated or depressed pulse, and damage to the lungs or thoracic cavity may result in either slow or rapid breathing. Similarly, an abnormal heartbeat could indicate an internal injury. Regassa's pulse, breathing, and heartbeat were in the normal range, indicating that there were no internal injuries.[30]

19. During later physical examinations and medical appointments, medical professionals did not observe—and Regassa did not complain of—any remaining injuries from the July 8, 2013 use of force, including at appointments approximately six weeks and fourteen months after the incident.[31]

20. During trial, Regassa lifted his shirt and the Court inspected Regassa's torso.[32] The Court observed clear and obvious scarring around Regassa's torso in the shape of a chain, with individual links clearly visible.

---

[28] *Id.* at 213; *see* Defendant's Exs. 7, 9. In the video of the incident, there is a significant amount of blood on Regassa's head and face, but no apparent blood or injuries on Regassa's torso.
[29] Doc. 333 at 213-15, 240-42.
[30] *Id.* at 249-51.
[31] *Id.* at 222-23, 244-46; *see* Defendant's Exs. 11, 12.
[32] *See* Doc. 333 at 109-13.

## III.   CONCLUSIONS OF LAW

### A.   Standard of Review

The FTCA permits individuals to seek compensation for injuries arising out of intentional torts if those torts are committed by an "investigative or law enforcement officer[] of the United States Government."[33] "[T]he liability of the United States under the FTCA is determined by the law of the state where the allegedly tortious act occurred, 28 U.S.C. § 2674, [and this Court] will [therefore] look to the state courts to determine how to resolve the underlying legal issues."[34]

The underlying acts here all occurred at USP Lewisburg, which is located in Lewisburg, Pennsylvania.[35] Accordingly, Regassa's claim is governed by Pennsylvania law. Under Pennsylvania law, "'[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'"[36]

Nevertheless, "officials charged with the custody of prisoners are privileged to use force which is reasonable under the circumstances to maintain control of their charges."[37] In that vein, the Restatement (Second) of Torts makes clear that

---

[33]   28 U.S.C. 2680(h).
[34]   *DeJesus v. U.S. Dep't of Veterans Affairs*, 479 F.3d 271, 279 (3d Cir. 2007).
[35]   Doc. 45.
[36]   *Minor v. Kraynak*, 155 A.3d 114, 117 n.2 (Pa. Commw. Ct. 2017) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)).
[37]   *Picariello v. Fenton*, 491 F. Supp. 1026, 1038 (M.D. Pa. 1980).

correctional officers may use force against inmates so long as the force is not excessive.[38] Stated differently, "[w]hile corrections officers have the authority to use necessary force under appropriate circumstances, the reasonableness of this force in relation to their employment duties determines whether particular conduct is considered an assault and battery."[39]

### B. Application of the Law to the Facts of this Case

The evidence in this case clearly establishes that Brininger used force against Regassa when Brininger wrapped his arms around Regassa and drove Regassa to the floor. Thus, the only question is whether the force applied was reasonably necessary to maintain control over Regassa and ensure the safety of Brininger and others. The Court finds that it was.

When Brininger was transporting Regassa back to his cell, Regassa abruptly turned and spit on Brininger. This action could have potentially harmed Brininger but, more importantly, Regassa's action pulled Brininger's hand and arm away from his body and loosened or broke his grip on Regassa's handcuffs, which effectively jeopardized Brininger's ability to control Regassa's movements. Regassa's

---

[38] *See* Restatement (Second) of Torts §§ 118, 132 (detailing permissible use of force by police officers during arrest); *id.* § 132 cmt. b. (applying rule to correctional officers using force against prisoners within their custody).

[39] *Millbrook v. United States*, No. 3:15-CV-0832, 2016 WL 4734658, at *10 (M.D. Pa. Sept. 12, 2016) (internal quotation marks omitted). *Cf. Renk*, 641 A.2d at 293 ("In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery").

behavior, combined with Brininger's tenuous control over Regassa, indicated to Brininger that Regassa posed a threat to himself and others. Brininger was therefore required to use force to regain control of Regassa.

Regassa's testimony was to the contrary, as he asserted that he was the victim of an unprovoked attack in which Brininger slammed Regassa to the floor and several officers then hit, kicked, and stomped on Regassa's back, shoulders, and head for approximately three minutes.[40] Based upon the demeanor of the witnesses at trial, the Court finds the accounts of Brininger, Kranzel, and Kulp to be credible, but finds Regassa's account incredible.

This assessment is supported by the injuries that Regassa sustained from the use of force. The only physical injuries that are apparent from the record—including video and photographic evidence, medical records, and credible testimony—are a laceration and swelling above Regassa's right eye and a bloody nose. These injuries are consistent with the accounts of Brininger, Kranzel, and Kulp that Brininger wrapped his arms around Regassa and drove Regassa to the ground. Such a maneuver could be expected to cause Regassa's injuries, particularly if he fell face first and was unable to break his fall because his hands were secured behind his back by handcuffs. Such injuries are inconsistent with Regassa's account that he was punched, kicked, and stomped on by multiple individuals for approximately three

---

[40] Doc. 33 at 34-41.

minutes, which would be expected to produce more severe injuries. Given this evidence, and the Court's credibility assessments, the Court rejects Regassa's account of the events of July 8, 2013.

The Court further concludes that the force used by Brininger was reasonable under the circumstances, and therefore did not constitute an assault or battery. Four prison officials—with several decades of experience between them—testified credibly that, in their experience, Brininger's actions were appropriate and reasonable to maintain control of Regassa. The Court agrees.

When Regassa turned to spit on Brininger, Brininger's grip on Regassa's handcuffs was jeopardized. This, in turn, led to a legitimate concern that Regassa could take further action that would harm himself or others, particularly given the elevated risk posed by inmates confined in the SMU. Given that Brininger's arm was outstretched and he had lost his leverage over Regassa's movements, Brininger reasonably determined that he would be unable to pull Regassa back toward him to regain control and must instead drive Regassa to the ground to regain control of the situation. The Court concludes that this amount of force was "reasonable under the circumstances to maintain control of" Regassa.[41]

The Court's conclusion that the force applied was reasonable under the circumstances is supported by the nature of Regassa's injuries. As the United States

---

[41] *Picariello*, 491 F. Supp. at 1038.

Supreme Court has observed, "[t]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation," and "may also provide some indication of the amount of force applied."[42]

As discussed above, the injuries that Regassa sustained are consistent with Brininger's account of the incident and are not overly severe.[43] Although Regassa suffered a laceration with accompanying swelling and a bloody nose, he sustained no internal injuries and no broken bones. There were no additional cuts, swelling, or apparent bruises. The lack of any significant injuries underscores the conclusion that Brininger used only the quantum of force necessary to regain control of Regassa once Regassa began to break free of Brininger's grasp.

Finally, the Court notes that Regassa contends that his medical records were falsified to conceal the extent of his injuries. This assertion finds no support in the record. Barth testified credibly that he never denied Regassa medical care or falsified or failed to report Regassa's injuries or complaints.[44] Furthermore, the clinical director of USP Lewisburg, Kevin Pigos, M.D., testified that he had reviewed

---

[42] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks omitted).
[43] The Court did observe significant scarring on Regassa's body in the shape of a chain. However, Regassa admitted that these scars—as well as scars on his wrists and ankles—came from the use of restraints following the alleged assault on July 8, 2013. (Doc. 333 at 112-13). While the scarring was notable and severe, that scarring relates to the use of restraints, and all claims related to the use of restraints have been dismissed from this action. (*See* Docs. 111, 200). Consequently, those scars are irrelevant to Regassa's remaining FTCA claim.
[44] Doc. 333 at 245.

Regassa's medical records and found "nothing out of sorts here that would make me suspect that this is erroneous, inaccurate."[45] As Dr. Pigos explained "[t]here are multiple providers over an extended timeframe, and not one of these records do I see anything out of usual that would lead me to suspect that they are all inaccurate."[46]

There is a minor discrepancy in Barth's initial report where, although Regassa complained of pain, the report listed Regassa's pain as zero on a scale from zero to ten. Nevertheless, Barth and Pigos satisfactorily explained this discrepancy. Barth testified that, when an inmate is unable to verbalize a pain level on a pain scale, the program "automatically generates a zero, as in no pain, no complaint. But I did, in my assessment, note that he did say his chest hurts."[47] Dr. Pigos similarly noted that a pain scale is "automatically populated."[48] Accordingly, when a medical provider is examining an uncooperative inmate, "it is almost impossible to have any patient say oh, my opinion is three out of ten or five out of ten" and Dr. Pigos would expect the pain scale to populate as zero, despite the inmate experiencing pain.[49] Thus, this discrepancy does not support a conclusion that any of Regassa's medical records were falsified.

---

[45] *Id.* at 252.
[46] *Id.* at 262.
[47] *Id.* at 232.
[48] *Id.* at 253.
[49] *Id.* at 254.

## IV. CONCLUSION

In accordance with the above discussion, the Court concludes that, although Brininger applied force to Regassa, that force was reasonably necessary to maintain control of Regassa and ensure the safety of Regassa, Brininger, and others. Accordingly, Brininger was privileged to use such force, and did not commit an assault or battery. Judgment will therefore be entered in favor of the United States.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge
